This is a suit involving the law of agency. Plaintiff is seeking to recover the purchase price of a lot of fruit trees and other plants sold and delivered by him to defendants under a contract of sale entered into by plaintiff and defendants' agent. Attached to the petition are the order and receipt for the trees delivered, together with the price. The defense made is that the agent was without authority to bind defendants.
Plaintiff is engaged in the nursery business which nursery is located a few miles from the City of Natchitoches, Louisiana. The defendants, Roy L. Aycock and D.P. Hamilton, owned and operated a ranch and farm near the City of Natchitoches, Louisiana, under the name of Hamcock Ranch. Mr. R.C. Cochram was employed by *Page 151 
defendants to attend the pecan trees on the place and later employed by the month to look after the fruit orchard and pecan trees. Mr. Aycock and Mr. Cochram discussed buying fruit trees to set out an orchard and selected a plot of ground on which the fruit orchard should be planted, and Mr. Cochram was instructed to buy the trees from a certain Texas nursery, unless he could save money by purchasing them from plaintiff and that at the time he gave Cochram a catalog of a Texas nursery as a guide to the prices to be paid. Cochram testified he was not given the Texas nursery catalog until after he had placed the order for the trees with plaintiff, and that the instructions were to buy the trees if he found the prices right; and that he followed these instructions and bought first-class trees and plants at the proper prices.
The trees and plants were delivered by the plaintiff and an eight-month-old gilt given to him as part payment for a consideration of $12.50 by Cochram, who credited the itemized bill for the trees and plants with the $12.50 and sent it to Mr. Aycock at El Dorado, Arkansas. A few days later Mr. Aycock appeared at the ranch and expressed dissatisfaction with the price charged by plaintiff and with Cochram for disposing of the gilt. He testified, in reply to the question: "When you first learned of the transaction, what did you do? A. I got hot, and made out a check to Mr. Cochram and went to the Ranch, that was on Friday afternoon or Saturday morning, and with Mr. Cochram I went out in this lot where they had partly buried the trees and talked to him, and told him that the deal and the whole arrangements were not satisfactory to us, and my instructions were to load the trees up and take them back to Chambers, and I talked with Mr. Hamilton and he seemed to think the thing to do was to send Cochram down and tell Mr. Chambers that we did not like it, that we would pay what the trees were worth, and I sent Mr. Cochram to town that night, the next morning he told me he did not see Mr. Chambers, but he talked to his wife, and that they were going to do something about it."
No further action was taken by defendants and the trees were later planted by them in their orchard. The nursery goods were delivered on December 11, 1941 and defendants received the itemized bill on December 18, 1941 and on about December 21st, Mr. Aycock went to the ranch and expressed dissatisfaction with the transaction as to the price only.
On December 23, 1941 plaintiff's attorney addressed a letter to Mr. Aycock in which they made demand for the payment of the bill in an amount of $220.79. In that letter they stated: "Now at this late date, we understand that Mr. Aycock has telephoned Mr. Chambers advising that he does not want the trees."
In reply to this letter, Mr. Aycock denied that Mr. Cochram had any authority to purchase the trees. The letter is as follows:
"This acknowledges receipt of your letter of December 23d. In reply, we advise that we never at any time authorized the purchase of the fruit trees; and when we found out that they had been delivered to our place without any authority, we suggested to Mr. Cochram (brother-in-law to Mr. Chambers), although he had acted, as heretofore pointed out, without our authority or permission, that we would through him buy these trees at the current market price — which was about 11 cents per tree for the peach trees.
"We definitely instructed Mr. Cochram that if this could not be done that Mr. Chambers be instructed to pick up his merchandise.
"Mr. Cochram, also without our knowledge, permission or authority, let Mr. Chambers have a very fine-blooded Poland China gilt that we had no intention of disposing of at any price.
"We think it would be advisable for Mr. Chambers to send and get his merchandise without further delay."
This suit was filed on January 9, 1942. In their answer defendants denied owing plaintiff any amount and alleged that the entire transaction is almost shown by the attached letter directed to plaintiff's attorney (copied above). They then alleged receipt of the trees and plants, as alleged by plaintiff, and further alleged in view of the fact they can use at the current market price as of date of delivery, which current price is alleged, and in view of the fact that defendants' employee, although unauthorized to do so, did place the order with plaintiff, the defendants are ready to accept said trees and plants at the current market price alleged by defendants, which *Page 152 
totals $122.35, together with $10 court costs, which amounts defendants deposited in the Registry of the court.
There is much evidence in the record as to the prices charged by other nurseries for similar trees and plants. The lower court found that defendants' agent was unauthorized to purchase the trees and plants at the price agreed upon, but since defendants had used the goods by planting them in their orchard, plaintiff was entitled to recover on a quantum meruit the value of the merchandise, which it found to be $188.19, with legal interest thereon from judicial demand until paid. It awarded judgment accordingly and defendants are prosecuting this appeal. Plaintiff has answered the appeal praying that the judgment be increased to the amount originally sued for.
We are of the opinion the law of contract and agency is applicable to the case and that it was error to arrive at a judgment on a quantum meruit. It is admitted by all parties that defendants accepted the trees and plants by planting them in their orchard, therefore, whether or not their agent was authorized to purchase them becomes an immaterial issue. Plaintiff sold the merchandise to defendants through their agent at a definite, fixed price. If the agent was not authorized to make the purchase, defendants could have refused to accept the trees and notify plaintiff to come and get them and, whether he came after them or not would have made no difference, but when they took possession of the trees and plants and planted them, they ratified the acts of their agent and became bound for the agreed purchase price.
Article 1840 of the Revised Civil Code, Title Unauthorized Contract Made in Name of Another Voidable — Ratification, provides, "Contracts, however, made in the name of another, under void powers, will be valid, if ratified by the principal before the other contracting party has signified his dissent to the agreement."
Defendants were without right in law to accept the trees and fix a different price than the agreed one, without the consent or acquiescence of the plaintiff. Plaintiff at no time ever agreed or led defendants to believe that he would accept any less than the price for which he sold the trees to their agent, and when they ratified the acts of their agent by making use of the trees and plants, they became bound for that price to plaintiff.
After trial of the case and before argument, attorney for defendants suggested that the court reporter's bill had not been paid, to which remark counsel for plaintiff suggested that it be paid out of the funds deposited by defendants in court. The suggestion was acceptable to counsel for defendants who dictated into the record the following stipulation: "That on suggestion of counsel for plaintiff, the stenographer's fee be taken out of the money deposited in Court without prejudice."
The last two words were dictated by the attorney for the plaintiff. Based on this agreement, counsel for defendants filed a plea of estoppel praying that plaintiff be held estopped from claiming any amount in addition to the amount deposited by defendants. The lower court passed upon the plea as follows: "The Court was present when the circumstance, out of which the plea of estoppel arose. The attorney for defendants brought the matter up, and not only consented to the money being paid the Court Stenographer, but also encouraged it. On its face it appeared that the attorneys were permitting the Court stenographer to take his fee, without prejudicing the rights of either, and for the sole purpose of permitting him to be paid that much sooner. There was clearly no intention on the part of the plaintiff to accept for himself any part of the tender. The defendant in his brief admits that he encouraged the taking of the money by the Court Stenographer. The Court believes, under the circumstances, that the plaintiff lost none of his rights. Therefore let the plea of estoppel be overruled."
We find no error in the ruling of the lower court and fully agree with its reasoning in arriving at his conclusions.
It therefore follows that the judgment of the lower court is amended by increasing the award from $188.19 to $220.79, and as amended, it is affirmed with costs. *Page 153